NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-312

SHEPHERD KAPLAN KROCHUK, LLC

vs.

JOHN R. BORZILLERI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant and plaintiff in counterclaim in this case, John R. Borzilleri, was employed by the plaintiff and defendant in counterclaim, Shepherd Kaplan Krochuck, LLC (SKK), a registered investment adviser, as a portfolio manager for a private fund affiliated with SKK. In 2014 and 2015, Borzilleri filed two lawsuits under the False Claims Act against nearly twenty major pharmaceutical companies (qui tam lawsuits or qui tam actions). These lawsuits alleged among other things that these pharmaceutical companies conspired to defraud Medicare by colluding to inflate prescription drug prices, causing losses of approximately $200 billion.

After the United States Department of Justice decided not to intervene in the qui tam lawsuits, and with knowledge about

when the lawsuits would be unsealed, see 31 U.S.C. § 3730, Borzilleri, who had long been selling short the stock of these pharmaceutical companies, escalated that selling. He also crafted a press release that included information that the qui tam lawsuits had been unsealed and sent it to recipients in the financial and media industries. The complete factual details are well known to the parties and will not be repeated here, but it suffices to say that shortly thereafter he was fired by SKK.

Litigation ensued. SKK filed suit against Borzilleri, seeking a declaration that its termination decision was lawful and the recovery of damages stemming from Borzilleri's alleged breach of contract and breach of the duty of loyalty. Borzilleri asserted ten counterclaims in response. Five were dismissed for failure to state a claim. Two of Borzilleri's remaining counterclaims alleged that SKK had breached various contractual obligations (Counts VI and VII). The other three alleged that his firing was in retaliation for his filing of the qui tam actions (Counts I, III, and IV). Such a retaliatory firing would be unlawful. See 31 U.S.C. § 3730(h)(1). SKK argues strenuously that Borzilleri engaged in unlawful insider trading, and that that was why he was fired. Borzilleri argues equally strongly that his views about the behavior of the pharmaceutical companies, and the factual information that underlay the qui tam actions were well known, that he had

2

publicized them extensively prior to the press release and the unsealing of the qui tam actions, and that he did not engage in insider trading, which is to say trading stock "on the basis of material, nonpublic information."  United States v. O'Hagan, 521 U.S. 642, 651-652 (1997).

SKK moved for summary judgment on Borzilleri's five remaining counterclaims and that motion was allowed as to Borzilleri's retaliation-based claims due to a failure to show pretext and retaliatory animus on the part of SKK but denied as to Borzilleri's contract-based claims.  The parties subsequently stipulated and agreed to the voluntary dismissal of Borzilleri's counterclaims except the retaliation-based claims (Counts I, III, and IV), and all of SKK's claims.  The judge "approved and so ordered" the stipulation, which included the provision that the "Stipulation shall constitute the final judgment of the Court."

In this appeal, Borzilleri challenges the order allowing summary judgment on his retaliation-based claims.  The only question properly before us is whether there is a genuine issue of material fact as to whether the assertion by SKK that Borzilleri was fired for alleged insider trading was a pretext designed to cover up Borzilleri's firing in retaliation for his filing of the qui tam actions.  We view the summary judgment record in the light most favorable to the nonmoving party,

3

Borzilleri, drawing every reasonable inference in his favor. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016).

Before us Borzilleri points to evidence he says raises a genuine issue of material fact with respect to pretext: the weakness of the allegation of insider trading, which, he asserts, shows that SKK could not have thought he had engaged in insider trading; SKK's shifting explanations of its concerns and the reasons for the firing; SKK's unwillingness to put the reason for the termination in writing; and contemporaneous notes he made regarding his phone call on April 20, 2018, with Tim Krochuck, the managing member of SKK.

Those contemporaneous notes were memorialized in an e-mail that Borzilleri sent to himself (e-mail or notes). The summary judgment record contains that e-mail, which was attached to Borzilleri's affidavit in support of his opposition to SKK's motion for summary judgment. Borzilleri's notes indicate that during the April 20 phone call, in which Krochuck first indicated that SKK desired "to sever its relationship with" Borzilleri, Krochuck stated "that SKK was 'no longer concerned about insider trading, after reviewing the Qui Tam documents,'" but that SKK's "major concern was some kind of 'defamation' suit by the Qui Tam defendants against SKK, myself [i.e., Borzilleri] and my fund investors." There is also evidence in the summary judgment record of a refusal by SKK to put any reason for

4

dismissal in writing and evidence that could support a finding that the contents of the press release were not and could not have been considered by SKK to be material nonpublic information, including evidence that the press release went out after the qui tam lawsuits were unsealed, and that the information in the press release was consistent with monthly reports that Borzilleri had been issuing to the public for years.

We think that the evidence pointed to by Borzilleri is sufficient to raise a genuine issue of material fact with respect to whether the claim of firing for insider trading was merely a pretext and whether his firing was in fact in retaliation for filing the qui tam actions.[1]

SKK argues that some of the evidence on which Borzilleri now relies was not pointed to by Borzilleri in his pro se

---

[1] SKK argues that the description of the phone call in Borzilleri's affidavit in support of his opposition to SKK's motion for summary judgment, is inconsistent with his sworn statements in his deposition that he was never told the reason he was terminated. Borzilleri's contemporaneous notes say only that Krochuck spoke to him about severing the relationship between SKK and Borzilleri during the April 20, 2018 phone call. Since, as Borzilleri asserts in the joint statement of undisputed material facts, that Borzilleri might not have understood this to refer to termination, there is no necessary contradiction between these two pieces of evidence. Cf. Ng Bros. Constr., Inc. v. Cranney, 436 Mass. 638, 648 (2002) ("the nonmoving party cannot create a material issue of fact and defeat summary judgment simply by submitting affidavits that contradict its previously sworn statements").

opposition to the motion for summary judgment. The failure to provide a written explanation, and the evidence that SKK could not have thought the press release contained material nonpublic information, were explicitly addressed in Borzilleri's opposition. The e-mail and SKK's shifting explanations, however, were not. Nonetheless, Borzilleri's responses in the joint statement of undisputed material facts include a citation to the e-mail in a response in which Borzilleri states that he disputes whether the April 20 phone call informed him that he was terminated as a result of "short-trading in the securities of the qui tam defendants while potentially in possession of material nonpublic information about them." He asserts that "Mr. Krochuck made no mention of Dr. Borzilleri having violated any corporate policies or trading laws. Dr. Borzilleri knew immediately that the true reason for the separation was SKK'[s] desire to quickly dissociate from Dr. Borzilleri's qui tam activities." We think that this evidence was sufficiently put before the judge to preserve the argument that a genuine issue of material fact existed, and that the summary judgment motion should not have been allowed as to counts I, III, and IV of the counterclaim.

Accordingly, so much of the judgment that relates to counts

6

I, III, and IV of the counterclaim is reversed.  In all other respects, the judgment is affirmed.

<u>So ordered</u>.


By the Court (Meade, Rubin & Blake, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  May 3, 2023.

---

[2] The panelists are listed in order of seniority.